JOHN A. MENDEZ
United States Attorney
JAY R. WEILL
Assistant United States Attorney
Chief, Tax Division
PAUL J. KRUG
Special Assistant United States Attorney

    160 Spear Street, Room 504
    San Francisco, CA  94105
    Tel. No. (415) 744-9217

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|     Plaintiff, | No. CR. 92-0394-JPV |
|     v. | GOVERNMENT'S |
| FRANCISCO R. LEGASPI, | SENTENCING MEMORANDUM |
|     Defendant. | Sentencing Date:  January 14, 1993<br>Time:  2:30 p.m. |

    COMES NOW the UNITED STATES of AMERICA, by and through
counsel, and files its Sentencing Memorandum in the above-
captioned case.

### I.  PRELIMINARY STATEMENT

    In determining the applicable guideline range, the
government recommends that the Court adopt the findings of the
presentence report, which found appropriate an adjusted criminal
offense level of 13, a two-point reduction for acceptance of
responsibility, and a criminal history category of I.  On the
basis of these factors, the presentence report calculated the
applicable sentence range as 8-14 months imprisonment and
identified no grounds for departure.  An evidentiary hearing is
not requested.

FILED
JAN 8 4 40 PM '93
RICHARD W. WIEKING
CLERK U.S DISTRICT COURT
NO. DIST. OF CA

Document No.
District Court
Criminal Case Processing

1

## II.   FACTS

2       The defendant, an accountant and professional tax return

3  preparer, willfully prepared three false Forms 941 for a client,

4  Mission Childcare Consortium, Inc.  The defendant worked in an

5  accounting firm which provided payroll processing services to

6  Mission Childcare.  The accounting firm had been owned by Joseph

7  J. Beltran until January 1989 when Beltran sold the business to

8  the defendant.  Mission Childcare was not aware that the

9  defendant was filing false Forms 941 on their behalf.  At the

10 same time, Joseph Beltran was drawing unauthorized checks on

11 Mission Childcare's bank account.[1]  The defendant willfully

12 prepared false Forms 941 to conceal Beltran's fraudulent conduct

13 and to evade penalties for failing to make employment tax

14 deposits.  After Beltran's fraud was discovered by his client,

15 the defendant attempted to conceal his own criminal conduct by

16 filing a false Form 941 for the fourth quarter of 1989 which

17 overstated the correct amount of tax due.  Ultimately, Mission

18 Childcare paid the deficiencies in tax caused by the defendant's

19 criminal conduct.  The defendant and Beltran had at least a tacit

20 agreement to swindle their clients and defraud the government.

21 Both Beltran and the defendant were directly involved in the

22 payroll processing services and tax services provided to their

23 clients.  Mission Childcare deposited funds to the payroll

24 _____

25       [1]  On November 13, 1992, Joseph Beltran pleaded guilty to
   one count of 26 U.S.C § 7201 (tax evasion) in connection with the
26 evasion of payroll taxes due from Viva T-Shirts and one count of
   18 U.S.C. § 1344(2) (bank fraud) for fraudulently obtaining money
27 from Mission Childcare's bank account.  Beltran's sentencing is
   set for January 22, 1992, at 10:00 a.m. before the Honorable
28 Eugene F. Lynch, United States District Judge.

account to cover the gross payroll and all related taxes.  By
failing to remit all of the tax money to the IRS, the defendant
accumulated excess funds in the payroll account.  Those excess
funds were stolen by Beltran in July and October of 1989.  In
those same months, the defendant prepared the false Forms 941 to
conceal Beltran's theft from Mission Childcare and the IRS.  The
defendant and Beltran worked in concert to defraud both the IRS
and their clients.

When the defendant acquired Beltran's accounting business in
January of 1989, the defendant became responsible for withholding
taxes from wages paid to his employees and for remitting the
withheld taxes to the government.  For the quarterly periods
ended June 30, 1989 through December 31, 1991, the defendant
failed to remit the withheld taxes to the IRS.  He now owes
$49,337.46 for these periods.  He owes additional amounts for
1992 but those amounts have not been determined.  The defendant's
pattern of failing to pay over trust fund taxes for four
consecutive years proves that his conduct was willful.  Such
conduct violated § 7202 of the Internal Revenue Code which makes
it a felony to willfully fail to account for and pay over these
withheld taxes.  26 U.S.C. § 7202.

### III.   SENTENCING

U.S.S.G. §2T1.4 governs the defendant's base offense level
for violations of 26 U.S.C. § 7206(2).[2]  The base offense level

---

[2]   Part T of Chapter 2, Offenses Involving Taxation,
includes only Income Taxes, Alcohol and Tobacco Taxes, and
Customs Taxes.  This is an Employment Tax case for which no
guidelines have been expressly promulgated.  Therefore, the
provisions of U.S.S.G. §2X5.1 and 18 U.S.C. § 3553(b) control.
The most closely analogous guideline is U.S.S.G. §2T1.4 which

3

is determined by resort to U.S.S.G. §2T4.1 (Tax Table)

corresponding to the relevant tax loss (as in effect at the time

of the offense).  The relevant tax loss from the defendant's

course of conduct was $71,059.39.  See United States v. Fine, 975

F.2d 596 (9th Cir. 1992)(en banc)(Loss from counts to be

dismissed is included).  The defendant's base offense level

determined by resort to U.S.S.G. §2T1.4(a)(1) and §2T4.1 (Tax

Table)(as in effect on the date of the offense) is 11, because

the relevant tax loss was $40,001 or more but not more than

$80,000.  U.S.S.G. App. C, amend. 237.[3]  There is no reduction

under the Guidelines for amounts subsequently recovered.  United

States v. Joetzki, 952 F.2d 1090, 1096 (9th Cir. 1991); United

States v. Davis, 922 F.2d 1385, 1391-2 (9th Cir. 1991).  This is

especially true here because the subsequent payments were not

made by the defendant but by his client.

In determining the sentence within the applicable guideline

range, the Court may consider the defendant's failure to properly

account for and pay over trust fund taxes in excess of $50,000,

---

references the definition of "tax loss" in §2T1.3 (an income tax
guideline).  The formula for computing "tax loss" in §2T1.3 as a
percentage of understated income is unworkable in an employment
tax case.  A Form 941 contains no line for reporting income.
Therefore, pursuant to 18 U.S.C. § 3553(b) the "tax loss" in this
case is calculated by taking 100% of the understatement of tax
and 100% of the overstatement of deposits.  This totals
$71,059.39.

[3] Application of this amendment would disadvantage the
defendant by increasing the base offense level determined by
resort to the Tax Table to 12.  Therefore, the earlier version is
applied.  Where, as here, an earlier version of the Guidelines is
used, the earlier version of the Guideline Manual "shall be
applied in its entirety," except "to the extent later amendments
are clarifying rather than substantive changes."  U.S.S.G.
§1B1.11(b)(2).

1 taxes that the defendant withheld from wages paid to his own

2 employees.  See U.S.S.G. §1B1.4 ("the court may consider, without

3 limitation, any information concerning the background, character,

4 and conduct of the defendant, unless otherwise prohibited by

5 law."); 18 U.S.C. § 3661; United States v. Grayson, 438 U.S. 41,

6 50-55 (1978)(Sentencing Court may consider conduct for which the

7 defendant has not been tried or convicted).  "Few things could be

8 so relevant [to a sentencing judge] as criminal activity of a

9 defendant."  United States v. Doyle, 348 F.2d 715, 721 (2nd Cir.)

10 cert. denied, 382 U.S. 843 (1965).

11                      IV.  **DEPARTURES**

12      A downward departure is not permitted except in the rare

13 case where the defendant identifies a "mitigating circumstance of

14 a kind, or to a degree, not adequately taken into consideration

15 by the Sentencing Commission..."  18 U.S.C. § 3553(b).

16      A.   There are no offense-related grounds for departure.

17      In the typical § 7206(2) violation, the "tax loss" goes into

18 the pocket of the taxpayer, not the return preparer.  As early as

19 1939, in United States v. Kelley, 105 F.2d 912, 917 (2d Cir.

20 1939), Justice Learned Hand said with regard to § 1114(c) of the

21 Revenue Act of 1926, 26 U.S.C. § 1693(b)(1), the predecessory of

22 § 7206(2),:

23           The purpose was very plainly to reach the advisers of
            taxpayers who got up their returns, and who might wish
24           to keep down the taxes because of the credit they would
            get with their principals, who might be altogether
25           innocent.

26      U.S.S.G. §2T1.4 clearly requires a base offense level based

27 on the "tax loss" even though the tax underpayment does not go

28 into the pocket of the return preparer.  U.S.S.G. §1B1.3(a)

1 requires an offense level determination on the basis of all acts

2 for which the defendant is accountable, even though the money did

3 not go into his own pocket.  United States v. Kaufman, 800

4 F.Supp. 648, 652 (N.D.Ind. 1992).

5      The defendant claims that he falsified the Forms 941 when he

6 realized that he had not made adequate tax deposits so that the

7 IRS would not assess penalties, and that he intended to

8 overreport taxes on the Form 941 for the fourth quarter of 1989.

9 This explanation is not plausible.  If the defendant's

10 explanation were true, he would not have failed to make adequate

11 tax deposits for four consecutive quarters and would not have

12 falsified Forms 941 for three separate quarters. The pattern of

13 conduct establishes that the defendant worked in concert with

14 Joseph Beltran to swindle Mission Childcare and the IRS.  After

15 Beltran's fraud had been discovered, the defendant tried to

16 conceal his own crimes by filing a false Form 941 for the fourth

17 quarter of 1989.

18      Even if the defendant's explanation is taken at face value,

19 it does not detract from the criminality of his conduct.  See

20 Sansone v. United States, 380 U.S. 343, 354 (1965)(holding that

21 no defense to a tax evasion charge is made out by showing that

22 the defendant willfully understated the tax liability for one

23 year but intended to report and pay the tax at some later time);

24 Edwards v. United States, 375 F.2d 862, 864-5 (9th Cir. 1967)(the

25 deliberate falsification is the legally operative fact for an

26 offense under § 7206(2)).

27      B.  There are no offender-related grounds for departure.

28      Only in extraordinary circumstances may the Court consider

specific offender characteristics in determining whether to depart. 28 U.S.C. 994(d) and (e); United States v. Boshell, 952 F.2d 1101, 1107 (9th Cir. 1991). Ordinary family ties and responsibilities, including support obligations, are not grounds for a downward departure. U.S.S.G. §5H1.6; United States v. Shoupe, 929 F.2d 116, 121 (3rd Cir. 1991), cert. denied, 116 L.Ed.2d 333 (1991); United States v. Berlier, 948 F.2d 1093, 1096 (9th Cir. 1991). Socio-Economic status, such as ownership of a business, is not grounds for departure. U.S.S.G. §5H1.10; United States v. Mogel, 956 F.2d 1555, 1563-4 (11th Cir. 1992). This is especially true where, as here, the defendant used his business to conduct criminal activity.

### V. SENTENCING RECOMMENDATION

The complexity of the tax laws has produced a great demand for tax experts to assist the public in complying with the law. The defendant willfully prepared fraudulent tax returns to bilk his client and the government. A sentence of incarceration is in order, not only to punish the defendant but also to deter other tax practitioners from similar criminal conduct. The government recommends a sentence of 10 months imprisonment.

Dated: JAN 0 8 1993

Respectfully submitted,

JOHN A. MENDEZ
United States Attorney

By: _Paul J Krug_
PAUL J. KRUG
Special Assistant U.S. Attorney

7

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing GOVERNMENT'S SENTENCING MEMORANDUM in the case of United States v. Francisco R. Legaspi, Criminal No. 92-0394-JPV was this date delivered to the following counsel:

              Barry J. Portman
              Federal Public Defender
              Robert J. Nelson
              Assistant Federal Public Defender
              450 Golden Gate Avenue
              San Francisco, CA  94102

I certify under penalty of perjury that the foregoing is true and correct.

Executed on    JAN 0 8 1993    , at San Francisco, California.

PAUL J. KRUG
Special Assistant U.S. Attorney