BARRY J. PORTMAN
Federal Public Defender
ROBERT J. NELSON
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 556-7712

Counsel for Defendant LEGASPI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 92-0394-JPV |
| Plaintiff, ) | |
| vs. ) | DEFENDANT LEGASPI'S |
| ) | SENTENCING MEMORANDUM |
| FRANCISCO R. LEGASPI, ) | |
| Defendant. ) | SPEEDY TRIAL ACT: |
| ) | NOT APPLICABLE |

INTRODUCTION

Francisco Legaspi stands ready for sentencing. On November 5, 1992, Francisco Legaspi pleaded guilty to Count One of an Indictment charging a violation of 26 U.S.C. §7206(2), aiding and assisting the preparation and presentation of false tax returns. His guideline sentencing range is 8 - 14 months, and the government is committed to recommend a sentence at the lower end of this guideline, and not oppose the defendant's serving no more than four months in custody, and the remaining time in home detention or community confinement.

///

DEF'S SENT MEM

- 1 -

Mr. Legaspi argues herein that there are legitimate grounds for a downward sentencing departure. He seeks a one offense level departure, from an offense level 11 to a level 10. At that level and a guideline range of 6 - 12 months, the guidelines authorize a sentence of six months home detention. U.S.S.G. §5C1.1(c)(3). Such a sentence will allow Mr. Legaspi to continue to provide for his two young children, who are wholly dependent upon him for their financial support.

## ARGUMENT

I. A DOWNWARD DEPARTURE IS APPROPRIATE BECAUSE MR. LEGASPI'S TWO CHILDREN ARE WHOLLY DEPENDENT UPON HIM FOR THEIR SUPPORT AND BECAUSE THE APPLICABLE OFFENSE LEVEL OVERSTATES MR. LEGASPI'S CULPABILITY.

At an offense level 11 and a criminal history category One, Mr. Legaspi's guideline sentencing range is 8 - 14 months. At that range, the Court cannot order a probationary sentence, but can order that the defendant split his sentence between community confinement and prison. U.S.S.G. §5C1.1(e). At an offense level 10, Mr. Legaspi's guideline range would be 6 - 12 months. At that guideline range, the guidelines authorize a probationary sentence, so that the defendant may continue to live and work in the community. U.S.S.G. §5C1.1(c)(3). Mr. Legaspi herein argues for a downward sentencing adjustment of one offense level, so that he may receive a sentence of probation.

/ / /

/ / /

DEF'S SENT MEM

### A. Family Ties

The guidelines provide that family responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. U.S.S.G. §5H1.6. Several courts have determined, however, that family ties that are extraordinary do constitute grounds for a downward sentencing departure. See, e.g., United States v. Johnson, 964 F.2d 124, 128-29 (2d Cir. 1992); United States v. Pena, 930 F.2d 1486, 1495 (10th Cir. 1991).[1]

Any period of incarceration would have a devastating impact upon Mr. Legaspi's children, ages 10 and 11. Mr. Legaspi is the sole economic supporter for them. Even four months away from work would wreak havoc upon these children, as they are entirely dependent upon him. A one level adjustment is appropriate to allow Mr. Legaspi the opportunity to continue to ensure the welfare of his two young children.

### B. Offense Level Overstates Tax Loss

The guidelines in this case overstate the true loss in this case. Here, the tax loss is determined by the differential

---

[1] In United States v. Berlier, 948 F.2d 1093 (9th Cir. 1992), the Ninth Circuit briefly considered the issue of a downward sentencing departure due to family ties. The court affirmed the trial court's denial of a departure on such grounds. That case is readily distinguishable from the instant case because the family ties at issue in Berlier pertained solely to the defendant's efforts to keep his family together, a fact often present when one goes into custody. This case is readily distinguishable from Berlier, as Mr. Legaspi provides all the economic support for his children and divorced wife.

DEF'S SENT MEM

- 3 -

between the amounts stated on the forms and the correct filing amounts. However, there is no adjustment made for the fact that Mr. Legaspi made up the entire shortfall during the same tax year in question. While he underpaid taxes on behalf of his client during three quarters, he overpaid taxes in the last quarter of 1989, and thereby paying the correct amount of taxes for the year. Thus, the true loss to the government is the amount of the penalties for late payments, or approximately $7,000. At that level of loss, Mr. Legaspi's guideline range would be 0 - 6 months.

U.S.S.G. §5K2.0 and 18 U.S.C. §3553(b) authorize a sentencing court to impose a downward sentencing departure when there exists a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. Here, the Sentencing Commission fashioned guidelines based upon the tax loss to the government. That is, when someone pays less tax than he is supposed to, the loss is the amount that he was supposed to have paid. See, e.g., U.S.S.G. §2T1.3(a) (income tax loss is 28 percent of the amount by which the greater of gross income and taxable income was understated).

The Sentencing Commission did not take into consideration the situation where someone during the same tax year makes full payment, so that there is no true tax loss (other than a penalty assessment). Certainly, a tax preparer who makes the United

DEF'S SENT MEM

- 4 -

States whole by paying taxes during the end of the year is qualitatively less culpable than the tax preparer who attempts to line his pockets with funds he should have provided to the Internal Revenue Service. The government here concedes that Mr. Legaspi did not himself profit at all from his offense conduct, and is not seeking restitution. Mr. Legaspi's intent was to avoid his client from getting a penalty from his own carelessness; he never intended to, nor did he in fact, enrich himself.[2] Nevertheless, the applicable guideline treats him as having failed to pay $70,000 in taxes.

Because this is a factor that was not adequately considered by the Commission when it fashioned the tax loss guideline, a downward departure is warranted. Mr. Legaspi is seeking a modest downward departure of one offense level to reflect the true nature of the loss here.

### C. Combination or Convergence of Factors

If the Court determines that neither of the cited factors independently supports a downward sentencing departure, the court may consider each factor together and determine that the

---

[2] Mr. Legaspi vehemently objects to the government's portrayal of the offense conduct in its Sentencing Memorandum. Mr. Legaspi has steadfastly denied knowing that Mr. Beltran had taken money out of the Mission Childcare account. If he had such knowledge, that knowledge could have substantially benefitted him in light of the government's repeated requests to have Mr. Legaspi cooperate against Beltran. Mr. Legaspi's consistent response has been that he did not know that Beltran had secreted funds from the account. The government's position to the contrary is based on pure speculation, and nothing more.

DEF'S SENT MEM

- 5 -

"convergence" or "combination" of these factors supports a downward sentencing departure. See, e.g., United States v. Takai, 941 F.2d 738 (9th Cir. 1991); United States v. Cook, 938 F.2d 149 (9th Cir. 1991). Here, then, the facts that 1) Mr. Legaspi is the sole economic provider to his two young children, and so his incarceration would impact directly upon their welfare, and 2) the guidelines here over-represent the nature and seriousness of the tax loss, when viewed together, constitute grounds to depart downward. Additionally, it is relevant that Mr. Legaspi did not himself benefit financially from his wrongdoing.[3] This combination of factors favors a downward sentencing departure.

## II. VOLUNTARY SURRENDER TO A CAMP FACILITY IS APPROPRIATE.

Mr. Legaspi requests that the Court depart modestly downward to a probationary sentence. If the Court determines that a one level downward adjustment is not possible, then Mr. Legaspi requests the opportunity to voluntarily surrender.

The reason for this request is that Mr. Legaspi is a 39 year old man with no prior criminal history, who very clearly qualifies for a prison camp designation. If he is permitted to surrender voluntarily, he will surrender to such an institution. If he is not permitted to surrender voluntarily, then he will likely spend his entire incarcerated period in the county jail system, awaiting

---

[3] The only benefit he received was that his client, Mission Childcare, did not receive a tax penalty because of Mr. Legaspi's failure to pay the payroll tax in a timely manner.

DEF'S SENT MEM

designation which takes several months. Thus, the reason for this request is not to delay "judgment day." The reason is so that Mr. Legaspi can be properly designated and surrender to that institution. Mr. Legaspi requests that the Court recommend to the Bureau of Prisons that he be designated to FDC-Pleasanton, so that his family can visit him. He further requests that he be afforded the opportunity to surrender voluntarily to his designated institution.

## CONCLUSION

For the foregoing reasons, Francisco Legaspi respectfully requests that the Court sentence him to probation, under the condition that he serve six months home detention and serve 200 hours of community service.

DATED: January 12, 1993

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

ROBERT J. NELSON
Assistant Federal Public Defender

DEF'S SENT MEM

- 7 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on this date a true copy of the foregoing DEFENDANT LEGASPI'S SENTENCING MEMORANDUM was this date placed in the mail to:

> PAUL J. KRUG
> Special Assistant United States Attorney
> 160 Spear Street, Room 504
> San Francisco, CA  94105

A copy was also hand delivered to the United States Probation Department, 450 Golden Gate Avenue, 18th Floor, San Francisco, CA Attn:  JIM SCHLOETTER, United States Probation Officer.

Executed this 12th day of January, 1993 at San Francisco, California.

_____
Pat Tassa